IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

LUFKIN DIVISION

| | | |
|---|---|---|
| JEREMIAH STEVENSON, #1378259 | § | |
| VS. | § | CIVIL ACTION NO. 9:09cv39 |
| JOE D. VINSON, ET AL. | § | |

MEMORANDUM OPINION AND
ORDER OF DISMISSAL

Plaintiff Jeremiah Stevenson, a prisoner confined at the Gib Lewis Unit of the Texas prison system, proceeding *pro se* and *in forma pauperis*, filed the above-styled and numbered civil rights lawsuit pursuant to 42 U.S.C. § 1983 against Officer Joe D. Vinson, Lt. James H. Read and Sgt. Adam W. Little. The complaint was transferred to the undersigned with the consent of the parties pursuant to 28 U.S.C. § 636(c). The present Memorandum Opinion concerns the Defendants' motion for summary judgment (docket entry #32). The Plaintiff did not file a response.

Facts of the Case

The original complaint was filed on March 11, 2009. The Plaintiff complained that he was the victim of excessive use of force and retaliation. On July 1, 2009, the Court conducted an evidentiary hearing, in accordance with *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985), to consider the Plaintiff's claims. The hearing was conducted "to dig beneath the conclusional allegations; to reduce the level of abstraction upon which the claims rest; to ascertain exactly what scenario the prisoner claims occurred, as well as the legal basis for the claim." *Id*. at 180. The

hearing is "in the nature of a motion for more definite statement." *Id.* at 180-181. The Plaintiff testified as to the factual basis of his claims. Warden Dewayne Dewberry, Nurse Tara Patton and Regional Grievance Officer Edith Petty testified under oath about prison policies and information contained in the Plaintiff's prison records.

The Plaintiff stated that he filed a life endangerment claim and a Step 1 grievance against Defendant Vinson on August 10, 2007. He testified that he filed the life endangerment claim after Defendant Vinson struck him in the face. The use of force incident which is the subject of this lawsuit occurred on September 4, 2007. Defendant Read ordered a team of officers to suit up to remove a cup out of his cell in administrative segregation. The Plaintiff acknowledged that they were going to remove the cup because he had used it to throw milk on Officer Helm. He had the milk in his possession from the previous day. Defendant Little assembled the team members together. Defendant Vinson was the second man on the team. The Plaintiff testified that Defendant Read sent the team into his cell after giving him only one order to strip, when he purportedly should have first given him three orders. He was taking off his boxer shorts when the team entered his cell. The Plaintiff testified that he believes that the Defendants had already conspired to enter his cell and assault him. He added that the milk business was just an excuse to go into his cell and beat him.

Nurse Patton testified under oath from the Plaintiff's medical records. She testified that a use of force physical was conducted, which revealed that he had two lacerations to the face and several minor abrasions. The treatment provided did not specify whether his wounds needed sutures or just cleaning. There was no follow-up treatment.

Motion for Summary Judgment

The Defendants filed a motion for summary judgment (docket entry #32) on November 23, 2009. They argued that any claims that the Plaintiff may have about the use of force incident that occurred on August 10, 2007, should be dismissed for failure to exhaust administrative remedies. With regard to the use of force incident occurring on September 4, 2007, they argued that the Plaintiff's injuries were *de minimis*. They also argued that they are entitled to summary judgment based on qualified immunity because the Plaintiff failed to show a violation of his constitutional rights and that their actions were objectively reasonable. They argued that the retaliation claim should fail because the Plaintiff did not show a constitutional violation. They concluded their motion by arguing that they are entitled to summary judgment based on both qualified and official immunity. In support of the motion, they attached relevant portions of the Plaintiff's grievance records, relevant portions of his medical records, a copy of Major Use of Force Report MA-04186-09-07GL (including a video) and a Unit Classification Committee History Form.

The Defendants' version of the facts provided greater detail than the Plaintiff's discussion of the facts. They noted that the Plaintiff was confined in administrative segregation at all times applicable to this lawsuit due to his past behavior of assaulting staff and other inmates. He was classified as Level 3, which is the most aggressive or assaultive of administrative segregation inmates. They noted that the Plaintiff admitted that he kicked open his food slot and struck Officer Helm with the milk. He also admitted that the officers indicated to him that they would need to remove the container and search his cell and body. The Use of Force video recording reveals that the Plaintiff refused to submit to the correctional officers and even began to put his shirt back on

after being ordered to strip. The Plaintiff stood in front of the door in a defensive posture with his shoulder lowered as he prepared to meet the use of force team. The Defendants argued that his posture showed that he was preparing for force to be used and had no intention of complying with orders. The recording shows that security attempted a resolution when the Plaintiff was ordered to submit to the search at least twice on camera and several times prior to filming. Further, the recording shows that he struggled to the point that it took a five man team roughly five minutes to get him fully restrained and ready for transport.

The Defendants noted that the Plaintiff's injuries were not extensive and did not require intensive medical attention. His injuries included three 1.5 cm. cuts on his head and one on his face, as well as minor bruising to his side and upper back. A nurse noted "no adverse health effects from use of force." The treatment required nothing more than a sterilizing rinse and Band-Aids. Two weeks later, the Plaintiff felt comfortable enough to refuse his scheduled follow-up exam. On October 12, 2007, medical records reflect that his injuries had completely healed with no lacerations, contusions or bruising. The Defendants argued that the Plaintiff's injuries were superficial and *de minimis*.

The Defendants' legal arguments will be discussed more fully in light of these facts in the Discussion and Analysis section of this Memorandum Opinion.

Plaintiff's Response

The Plaintiff did not filed a response to the motion for summary judgment. The deadline for him to file a response was December 11, 2009. He did not file a response or offer any explanation for failing to file a response.

Discussion and Analysis

Summary judgment is proper when the pleadings and evidence on file show that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party for summary judgment has the burden of proving the lack of a genuine issue as to all the material facts. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Galindo v. Precision American Corp.*, 754 F.2d 1212, 1221-23 (5th Cir. 1985).

In deciding a motion for summary judgment, the Court must make a threshold inquiry in determining whether there is a need for a trial. "In other words, whether there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." 477 U.S. at 247-48. In making this threshold inquiry, the Court must consider that "[s]ummary judgment is proper when, viewed in the light most favorable to the non-moving party, the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact." *Smith v. Xerox Corp.,* 866 F.2d 135, 137 (5th Cir. 1989) (citations omitted); Fed. R. Civ. P. 56(c).

Once the movants make a showing that there is no genuine material fact issue to support the nonmovant's case, the nonmovant cannot survive a motion for summary judgment by resting on the allegations in his pleadings. *Isquith v. Middle South Utilities, Inc.,* 847 F.2d 186, 199 (5th

Cir.), *cert. denied*, 488 U.S. 926 (1988); *see also Celotex*, 477 U.S. at 324. Rather, he must direct the court's attention to evidence in the record sufficient to establish that there is a genuine issue of material fact for trial. *Celotex*, 477 U.S. at 324. To carry this burden, the nonmovant must present evidence sufficient to support a resolution of the factual issues in his favor. *Anderson*, 477 U.S. at 257. Summary judgment is proper if the affidavits, depositions, answers, and admissions on file fail to establish the existence of an element essential to the plaintiff's case and as to which he will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322-23. The nonmovant must submit competent summary judgment evidence sufficient to defeat a properly supported motion for summary judgment. *See, e.g., Burleson v. Texas Dept. of Criminal Justice*, 393 F.3d 577, 589-90 (5th Cir. 2004); *Domino v. Texas Dept. of Criminal Justice*, 239 F.3d 752, 755 (5th Cir. 2001).

Courts must employ summary judgment device cautiously. *Jackson v. Procunier*, 789 F.2d 307 (5th Cir. 1986). In prisoner *pro se* cases, courts must be careful to "guard against premature truncation of legitimate lawsuits merely because of unskilled presentations." *Murrell v. Bennett*, 615 F.2d 306, 311 (5th Cir. 1980).

The first issue raised by the Defendants concerns exhaustion of administrative remedies regarding the alleged incident that occurred on August 10, 2007. They argued that the Plaintiff did not exhaust both steps of the grievance procedures. In support of the argument, they submitted the Plaintiff's relevant grievance records. On August 14, 2007, the Plaintiff filed a Step1 grievance in Grievance Number 2007208415 complaining that he was struck in the back of the head. He named Officer Helm as the person who struck him. It is noted that he testified at the *Spears* hearing that Officer Vinson struck him. The Step 1 grievance was investigated and denied

due to a lack of evidence. The records do not show that the Plaintiff filed a Step 2 grievance about the matter.

The law governing the exhaustion of administrative remedies is 42 U.S.C. § 1997e. In 1996, Congress enacted the Prison Litigation Reform Act, which mandated that no action shall be brought by a prisoner "until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The Supreme Court accordingly unanimously concluded that inmates must exhaust their administrative remedies before proceeding to federal court. *Booth v. Churner*, 532 U.S. 731 (2001). The Supreme Court subsequently held that exhaustion is mandatory and is required for all actions brought by prisoners. *Porter v. Nussle*, 534 U.S. 516, 524 (2002). The Supreme Court thereafter reiterated that exhaustion is mandatory and will not be excused when an inmate fails to timely exhaust his administrative remedies. *Woodford v. Ngo*, 548 U.S. 81, 84 (2006). More recently, in *Jones v. Bock*, 549 U.S. 199, 216 (2007), the Supreme Court held that the failure to exhaust must be raised by the Defendants as an affirmative defense.

In the present case, the Defendants properly raised the affirmative defense of failure to exhaust administrative remedies with respect to the Plaintiff's claims concerning the incident that occurred on August 10, 2007. The Plaintiff did not exhaust his administrative remedies because he did not file a Step 2 grievance. The Court notes that it does not appear from the Plaintiff's testimony that he intended to file a civil rights claim regarding the incident that occurred on August 10, 2007. Instead, he noted he filed the Step 1grievance as a prerequisite to his retaliation claim. Nonetheless, to the extent that he may have intended to bring claims regarding the August 10, 2007 incident, the Defendants are entitled to summary judgment for failure to exhaust.

7

The next issue concerns the use of force incident that occurred on September 4, 2007. The Defendants argued that they are entitled to summary judgment because the Plaintiff's injuries were *de minimis*. They further argued that they are entitled to summary judgment based on qualified immunity because the Plaintiff failed to show a constitutional violation or that their actions were objectively unreasonable.

The Supreme Court has emphasized that the core judicial inquiry in an Eighth Amendment excessive use of force claim is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 7 (1992). An excessive use of force claim has both subjective and objective components. *Id.* at 8. In other words, there is the issue of whether the officials acted with a "sufficiently culpable state of mind" and if the alleged wrongdoing was objectively "harmful enough" to establish a constitutional violation. *Id.* A claimant must allege and prove there was an "unnecessary and wanton infliction of pain." *Id.* at 5. In deciding whether the use of force was wanton or unnecessary, a court may consider "the need for application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response." *Id.* at 7. (internal quotation and citation omitted). The absence of a serious injury is relevant to but not dispositive of the excessive force claim. *Id.* On remand in *Hudson*, the Fifth Circuit held that the five factors should be considered in determining whether there was an excessive use of force. *Hudson v. McMillian*, 962 F.2d 522, 523(5th Cir. 1992).

The Supreme Court added the following caveat in *Hudson* concerning the nature of the force used in a given situation:

> That is not to say that every malevolent touch by a prison guard gives rise to a federal cause of action. *See Johnson v. Glick*, 481 F.2d, at 1033 ("Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights"). The Eighth Amendment's prohibition of "cruel and unusual" punishment necessarily excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort "repugnant to the conscience of mankind."

*Hudson v. McMillian*, 503 U.S. at 9-10. The caveat has been the source of substantial litigation, and it provided the basis for one of the Defendants' arguments that they did not subject the Plaintiff to excessive use of force. The Fifth Circuit has repeatedly emphasized that an inmate must have suffered more than a *de minimis* physical injury. *Gomez v. Chandler*, 163 F.3d 921, 924 (5th Cir. 1999). There must always be some injury, albeit insignificant. *Knight v. Caldwell*, 970 F.2d 1430, 1432 (5th Cir. 1992), *cert. denied*, 507 U.S. 926 (1993); *Jackson v. Culbertson*, 984 F.2d 699, 700 (5th Cir. 1993). In *Siglar v. Hightower*, 112 F.3d 191, 194 (5th Cir. 1997), the Fifth Circuit held that a sore, bruised ear lasting for three days that resulted from an officer twisting the inmate's ear was *de minimis* and insufficient to provide a basis for a meritorious civil rights lawsuit. In *Gomez v. Chandler*, 163 F.3d at 924-25, the Fifth Circuit held that injuries consisting of pain and "cuts, scrapes, contusions to the face, head and body" that resulted from an inmate being knocked down, punched and kicked and that required medical treatment were more than *de minimis*. The Fifth Circuit also noted that even though there must be more than a *de minimis* physical injury, "there is no categorical requirement that the physical injury be significant, serious, or more than minor." *Id.* at 924.

The Fifth Circuit has additionally held that the question of whether the force used was more than *de minimis* must be evaluated in the context in which the force was deployed. In *Ikerd v.*

9

*Blair*, 101 F.3d 430, 434 (5th Cir. 1996), the Fifth Circuit explained that the amount of injury necessary to satisfy the requirement of some injury and to establish a constitutional violation is directly related to the amount of force that is constitutionally permissible under the circumstances. In *Williams v. Bramer*, 180 F.3d 699, 704 (5th Cir. 1999), the Fifth Circuit held that what constitutes an injury is subjective and defined entirely by the context in which the injury arises. Two chokings occurred in *Williams*. The first choking occurred when the officer attempted to search the plaintiff's mouth for cocaine pursuant to a search warrant, which resulted in fleeting dizziness, temporary loss of breath and coughing. The Fifth Circuit held that the use of force did not rise to the level of a constitutional violation under the circumstances. *Id.* at 704. The second choking was the product of a malicious choking. The plaintiff again suffered dizziness, coughing, and a loss of breath. The Fifth Circuit held that the injuries, although the same as before, qualified as a cognizable injury since the officer's actions were the product of maliciousness, as opposed to a legitimate search. *Id.* The Fifth Circuit specifically noted that it was required to accept a plaintiff's version of events as true for purposes of summary judgment. *Id.*

In the present case, the competent summary judgment evidence submitted by the Defendants reveals that the Plaintiff's injuries included three 1.5 cm. cuts on his head and one on his face, as well as minor bruising to his side and upper back. A nurse noted "no adverse health effects from use of force." The treatment required nothing more than a sterilizing rinse and Band-Aids. Two weeks later, the Plaintiff felt comfortable enough to refuse his scheduled follow-up exam. On October 12, 2007, medical records reflect that his injuries had completely healed with no lacerations, contusions or bruising. The injuries sustained by the Plaintiff went beyond the

injuries described as *de minimis* in either *Siglar* and *Williams*. Indeed, the injuries the Plaintiff received were more akin to those described by the Fifth Circuit in *Gomez v. Chandler* that needed medical attention and were described as more than *de minimis*. The Court notes that the Defendants' discussion concerning whether the injuries were *de minimis* focused solely on the extent of his injuries. The injuries were not discussed in the context of the use of force incident, as required by *Ikerd* and *Williams*. The Defendants have not shown that they are entitled to summary judgment based on *de minimis* injuries.

The next issue raised by the Defendants is the defense of qualified immunity with respect to the excessive use of force claim. The defense of qualified immunity shields government officials performing discretionary functions from liability for civil damages insofar as their conduct does not violate clearly established rights which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Wilson v. Layne*, 526 U.S. 603, 614 (1999). The doctrine of qualified immunity shields government officials "from civil damages liability as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated." *Fraire v. Arlington*, 957 F.2d 1268, 1273 (5th Cir. 1992), *citing Anderson v. Creighton*, 483 U.S. 635, 638 (1987).

The Supreme Court mandated that courts must employ a two-step sequence in evaluating whether government officials are entitled to qualified immunity claims in *Saucier v. Katz*, 533 U.S. 194 (2001). First of all, courts are required to resolve a "threshold question: Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right? This must be the initial inquiry." *Id.* at 201. Second, if the

plaintiff has satisfied the first step, courts are required to decide whether the right at issue was "clearly established" at the time of the defendant's alleged misconduct. *Id.* With respect to the second step, the Fifth Circuit has held that "a state actor is entitled to qualified immunity if his or her conduct was objectively reasonable in light of the legal rules that were clearly established at the time of his or her actions." *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002). When a defendant invokes qualified immunity, the burden shifts to the plaintiff to demonstrate the inapplicability of the defense. *Id.*

The Supreme Court recently revisited *Saucier v. Katz* in *Pearson v. Callahan*, 129 S.Ct. 808 (2009). The Court held that "experience supports our present determination that a mandatory, two-step rule for resolving all qualified immunity claims should not be retained." *Id.* at 817. The Court went on to hold that "while the sequence set forth in [*Saucier*] is often appropriate, it should no longer be regarded as mandatory. The judges of the district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Id.* at 818. The Supreme Court noted that the *Saucier* procedure sometimes unnecessarily "results in a substantial expenditure of scarce judicial resources on difficult questions that have no effect on the outcome of the case." *Id.* at 818. It was further noted that courts are free to follow the *Saucier* procedure, but the decision "simply recognizes that those courts should have the discretion to decide whether that procedure is worthwhile in particular cases." *Id.* at 821. The Fifth Circuit subsequently cited *Pearson v. Callahan* for the proposition that lower courts have the discretion to decide which of the two prongs should be addressed, but

noted that the traditional *Saucier* formulation is often times appropriate. *Collier v. Montgomery*, 569 F.3d 214, 217-18 (5th Cir. 2009). The Court will employ the traditional two-step approach.

In *Hudson v. McMillian*, the Fifth Circuit mandated that five factors be evaluated in determining whether a plaintiff was the victim of excessive use of force in violation of his Eighth Amendment right to be free from cruel and unusual punishment. 962 F.2d at 523. The first factor is the extent of the injury suffered. Once again, the competent summary judgment evidence shows that the Plaintiff's injuries included three 1.5 cm. cuts on his head and one on his face, as well as minor bruising to his side and upper back. A nurse noted "no adverse health effects from use of force." The injuries were minor and consistent with being forcibly placed on the floor.

The second factor was the need for application of force. The competent summary judgment evidence reveals that force became necessary after the Plaintiff threw milk on Officer Helm. The Plaintiff was already a Level 3 administrative segregation inmate. He was already categorized as one of the most aggressive and assaultive inmates in administrative segregation. His act of throwing milk on Officer Helm was just the latest example of his bad conduct. According to protocol, TDCJ officers were required to remove containers from inmate cells in order to reduce the risk of inmates using their containers to throw liquids, such as milk or urine, on other people. The officers thus needed to go into the cell to remove the cup and search the Plaintiff. Force could have been avoided if the Plaintiff had complied with instructions given to him. The use of force recording reveals that he refused to submit to a search and took a defensive posture. The recording reveals that the Plaintiff engaged in conduct that made the use of force necessary.

The third *Hudson* factor was the relationship between the need and the amount of force used. Again, according to protocol, TDCJ officers are required to remove containers. When the Plaintiff made the officers aware that he had a container and had, in fact, used it to throw milk on Officer Helm, they were required to enter his cell to remove the container and search him. The amount of force used was a direct result of the Plaintiff's failure to cooperate and his resistance. A five man team had to be assembled due to his resistance. They had to subdue him on the floor to conduct the search, and he persisted in struggling. His injuries were consistent with being forcibly placed on the floor. The extent of the force used was directly related to the degree of resistance caused by the Plaintiff.

The Court again notes that the incident was recorded. The Plaintiff did not file a response to the motion for summary judgment challenging the facts presented by the Defendants as represented on the recording. The Supreme Court addressed the use of video recordings in the context of summary judgment in *Scott v. Harris*, 550 U.S. 372 (2007). The Supreme Court found that the facts captured on a recording are dispositive when the facts are in dispute:

> When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of facts for purposes of ruling on a motion for summary judgment. . . . Respondent's version of events is so utterly discredited by the record that no reasonable jury could have believed him. The Court of Appeals should not have relied on such visible fiction; it should have viewed the facts in the light depicted by the videotape.

*Id.* at 380-81. The recording in this case clearly shows that the amount of force that was used was reasonable in response to the Plaintiff's behavior.

The fourth *Hudson* factor to consider was the threat reasonably perceived by the responsible officials. Once again, the Defendants were dealing with a Level 3 administrative

segregation inmate with a history of aggressive and assaultive behavior. He had just assaulted Officer Helms and had no intention of complying with instructions. The Defendants reasonably argued that they felt threatened and there was no telling what sort of liquid he possibly would throw on them next.

The final *Hudson* factor was the efforts made to temper the severity of the forceful response. The Defendants engaged in a number of attempts to avoid the use of any force. They gave the Plaintiff a number of verbal orders before they ever entered the cell. They would not have needed to resort to force if the Plaintiff had simply complied with orders. Instead of complying with orders, he took a defensive posture in anticipation of the officers entering the cell.

Overall, the undisputed competent summary judgment evidence reveals that the Plaintiff was not the victim of excessive use of force. He has not shown that the Defendants violated his constitutional rights. The Defendants are entitled to summary judgment based on qualified immunity because the Plaintiff did not satisfy the first element in the qualified immunity analysis.

The Plaintiff likewise failed to show or even address the second element in the qualified immunity analysis concerning whether the Defendants' actions were objectively unreasonable. Nonetheless, undisputed competent summary judgment evidence reveals that the Defendants' actions were objectively reasonable in response to the Plaintiff's misconduct. The Defendants are entitled to summary judgment based on qualified immunity with respect to excessive use of force claim.

The next issue raised by the Defendants concerns whether the Plaintiff has shown that he was the victim of retaliation. To state a valid claim for retaliation under section 1983, a prisoner

must allege (1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right, (3) a retaliatory adverse act, and (4) causation. *McDonald v. Stewart*, 132 F.3d 225, 231 (5th Cir. 1998); *Jones v. Greninger*, 188 F.3d 322, 324-25 (5th Cir. 1999). For example, the law is well established that prison officials may not retaliate against an inmate who exercises his right of access to court. *Ruiz v. Estelle*, 679 F.2d 1115, 1153 (5th Cir. 1982), *opinion amended in part and vacated in part*, 688 F.2d 266 (5th Cir. 1982), *cert. denied*, 460 U.S. 1042 (1983); *Campbell v. Beto*, 460 F.2d 765, 768 (5th Cir. 1972). Officials likewise may not retaliate against an inmate for using the grievance system. *Jackson v. Cain*, 864 F.2d 1235, 1249 (5th Cir. 1989). A plaintiff must show that a defendant possessed a retaliatory motive. *See Whittington v. Lynaugh*, 842 F.2d 818, 820 (5th Cir. 1988); *Hilliard v. Board of Pardons and Paroles*, 759 F.2d 1190, 1193 (5th Cir. 1985). The inmate must show more than his personal belief that he was the victim of retaliation. *Johnson v. Rodriguez*, 110 F.3d 299, 310 (5th Cir.), *cert. denied*, 522 U.S. 995 (1997); *Jones v. Greninger*, 188 F.3d at 324-25. Mere conclusory allegations of retaliation are not enough. *Moody v. Baker*, 857 F.2d 256, 258 (5th Cir. 1988). Moreover, he must show that "but for" a retaliatory motive, the defendants would not have engaged in the action. *Woods v. Smith*, 60 F.3d 1161, 1166 (5th Cir. 1995), *cert. denied*, 516 U.S. 1084 (1996). The inmate must produce direct evidence of motivation or allege a chronology of events from which retaliation may plausibly be inferred. *Id.*

In the present case, the Plaintiff alleged facts that satisfied the first element in a retaliation claim. He has not, however, shown anything else. He has not shown that the Defendants had an intent to retaliate against him; instead, he has presented nothing more than conclusory allegations

of retaliation. The Defendants correctly argued that he has not shown that "but for" a retaliatory intent, they would not have used force against him. Quite the contrary, the competent summary judgment evidence reveals that the Defendants would have entered his cell to remove the container and conduct a search after he engaged in misconduct by throwing milk on Officer Helm. The Plaintiff has not satisfied his burden for purposes of summary judgment of showing that he was the victim of retaliation. He has not shown a violation of a constitutional right. Furthermore, the Defendants are additionally entitled to summary judgment based on qualified immunity with respect to the retaliation claim because the Plaintiff has not shown that their conduct was objectively unreasonable.

Finally, the Defendants raised the issue of Eleventh Amendment immunity. The Eleventh Amendment provides that the State of Texas, as well as its agencies, are immune from liability. *Kentucky v. Graham*, 473 U.S. 159, 167 (1985). The Eleventh Amendment bars claims against a state brought pursuant to 42 U.S.C. § 1983. *Aguilar v. Texas Dept. of Criminal Justice*, 160 F.3d 1052, 1054 (5th Cir. 1998). In *Will v. Michigan Department of State Police*, 491 U.S. 58, 71 (1989), the Supreme Court held that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." The Supreme Court upheld the dismissal of the Michigan Department of State Police and its Director sued in his official capacity. *Id.* The Fifth Circuit has accordingly "held that the Eleventh Amendment bars recovering § 1983 money damages from TDCJ officers in their official capacity." *Oliver v. Scott*, 276 F.3d 736, 742 (5th Cir. 2002). The Defendants are entitled to summary judgment to the extent that the Plaintiff sued them for damages for actions taken in their official capacity.

In conclusion, the Defendants are entitled to summary judgment with respect to all of their arguments. It is accordingly

**ORDERED** that the Defendants' motion for summary judgment (docket entry #32) is **GRANTED**. It is further

**ORDERED** that the complaint is **DISMISSED** with prejudice. It is finally

**ORDERED** that all motions not previously ruled on are **DENIED**.

So **ORDERED** and **SIGNED** this 15 day of **December, 2009.**

_____
JUDITH K. GUTHRIE
UNITED STATES MAGISTRATE JUDGE